

# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| **CORPORATE REALTY, INC., ET AL** | * | **CIVIL ACTION** |
| **VERSUS** | * | **NO. 04-2933** |
| **GULF INSURANCE COMPANY** | * | **SECTION "L"(2)** |

## ORDER & REASONS

Before the Court are the cross-motions for summary judgment, which came on for

hearing before the Court with oral argument on January 19, 2005. This case arises from a denial

of coverage under a Real Estate Errors and Omissions Liability Policy ("Policy") issued by the

Defendant, Gulf Insurance Company ("Gulf Insurance"), to the Plaintiffs, the Corporate Realty

Group ("CRG"). Plaintiffs seek reimbursement from the Defendant of all legal fees and costs

they incurred and paid in defending a prior Texas state-court litigation, the settlement amount

paid to resolve that litigation, and penalties and interest. After considering the argument of

counsel, the legal memoranda, and all of the evidence, the Court hereby GRANTS the Plaintiffs'

Motion in part, DENIES the Plaintiffs' Motion in part, and DENIES the Defendant's Motion.

## I.    Factual and Procedural History

### A.    The Policy

The Plaintiffs in the case at bar took out a Real Estate Errors and Omissions Liability

Policy with Gulf Insurance for the period March 1, 2002, through March 1, 2003, with a

retroactive date of March 1, 1997. The Policy provided $2 million in coverage per claim for

DATE OF ENTRY

JAN 3 1 2005

Corporate Realty and Corporate Leasing.[1]

>    The pertinent sections of the Policy are as follows:
>
>    We will pay on behalf of an insured "damages" for which "claim" is first made during the
>    "policy period." ***Such "damages must arise out of an error, omission or negligent act
>    in the rendering of or failure to render "professional services" for others by you or on
>    your behalf.***
>
>    . . . .
>
>    We will have the right and duty to defend any "claim" or "suit" against an insured
>    seeking "damages" to which this insurance applies, even if any of the allegations of the
>    "claim" or "suit" are groundless, false or fraudulent.

(Pl's Ex. 2, Pl's Mtn. for Summ. Judg. at Section I) (emphasis added).

>    The Policy defines "professional services" to include, among other things, "services

performed by an insured for others as a . . . . (1) Real estate broker, real estate agent, real estate

salesperson, real estate personal assistant, real estate independent contractor, auctioneer of real

property; or (2) Real estate consultant or counselor; or . . . (4) Real estate leasing agent or

property manager. . . ." (Pl's Ex. 2, Pl's Mtn. for Summ. Judg. at Section VII(k)).

>    Section VII also defines "claim", "damages", and "suit" as follows:
>
>    d.  "Claim" means a demand received by an insured for money or services alleging an
>    error, omission or negligent act in the rendering of or failure to render "professional
>    services" for others by you or on your behalf.
>
>    . . . .
>
>    f.  "Damages" means compensatory damages which an insured becomes legally obligated
>    to pay.
>
>    . . . .

---

[1]Under Section III of the Policy, the executive officers, directors, employees, and agents
of Corporate Realty and Corporate Leasing are also insured parties.  Michael Siegel, as Executive
Vice-President of Corporate Realty, would thus be included as an insured party.

m.  "Suit" means a civil proceeding in which "damages" to which this insurance applies
are alleged.

(Pl's Ex. 2, Pl's Mtn. for Summ. Judg. at Section VII(d), (f), (m)).

Moreover, the Policy provides the following pertinent exclusions:

This insurance does not apply to "damages" or "claims expenses" for "claims":

    (a)    Arising out of any dishonest, fraudulent, criminal or malicious act, error or
            omission, committed by, at the direction of, or with the knowledge of an insured.

    . . . .

    (b)    For "damages" expected or intended by any insured.

    . . . .

    (p)    For punitive or exemplary damages.

(Pl's Ex. 2, Pl's Mtn. for Summ. Judg. at Section VI(a), (b), (p)).

**B.    Prior Texas State-Court Litigation**

On September 18, 2003, NOOB I, L.P.,[2] NOPK, L.P.,[3] and BG Real Estate Services, Inc.[4]

(collectively "BG Group") sued Corporate Realty and Michael Siegel[5] in Texas state court

("Plaza Tower Litigation").  The suit claimed that Siegel and Corporate Realty tortiously

interfered with leases between the BG Group (as landlord) and the State of Louisiana (as tenant)

relating to the Plaza Tower in New Orleans; tortiously interfered with the relationship between

the BG Group and the State of Louisiana with regard to the renewal of the leases; and, conspired

---

[2]This entity owned the Plaza Tower at the pertinent time.

[3]This entity owned a parking facility adjacent to the Plaza Tower.

[4]This entity managed and maintained the Plaza Tower and the parking facility.

[5]Michael Siegel is the Vice President of Corporate Realty, Inc.

3

to tortiously interfere with existing and prospective leases between the BG Group and the State of Louisiana.

According to the Original Petition,[6] the Plaza Tower plaintiffs' predecessor-in-interest, as owner of the Plaza Tower, was BAHA Towers Limited Partnership ("BAHA"). BAHA had entered into three leases with the State of Louisiana: Lease 1 for five years beginning in December 1995 and terminating in December 2000; Lease 2 for five years from September 1996 to September 2001; and, Lease 3 for five years from November 1998 to October 2003. In May 2000, after the three leases had been confected, NOOB I acquired the Plaza Tower and the three state leases.

Thereafter, according to the Original Petition, Siegel contacted an employee of NOOB I to extort a commission from the Plaza Tower plaintiffs for the renewal of the state leases. The petition alleges that Seigel boasted about his relationship with Roger Magendie, the State of Louisiana Division of Administration Facility Planning and Control Director under Governor Edwin Edwards, and threatened that "unless [the Plaza Tower plaintiffs] agreed to pay him (and Corporate Realty) a commission on the renewal of the State Leases, he could and would move all existing State leases out of Plaza Tower." (Pl's Ex. 1, Pl's Mtn. for Summ. Judg. at ¶ 22). Siegel allegedly made similar threats to an employee of BG Real Estate Services, Inc. The Petition also states that the Plaza Tower plaintiffs "did not acquiesce" to Seigel's attempted extortion. (Pl's Ex. 1, Pl's Mtn. for Summ. Judg. at ¶ 25).

---

[6]In their memorandum and exhibit book, Plaintiffs in this action refered to and included the amended petitions to the state court litigation. However, the parties agree for the purpose of this suit, only the Original Petition should be considered by this Court.

All citations to the Original Petition shall be to Pl's Ex. 1, Pl's Mtn. for Summ. Judg.

4

The Petition goes on to claim that, subsequent to Siegel's threats, BG Real Estate began to hear rumors that the State was going to breach its lease agreements and began to receive "spurious complaints" about the condition of Plaza Tower. For example, the Petition alleges that State tenants complained of asbestos, mold, and malfunctioning elevators[7], all of which the Plaza Tower plaintiffs claim were untrue and fabricated in anticipation of the breach. (Pl's Ex. 1, Pl's Mtn. for Summ. Judg. at ¶¶ 28-32).

In December 2001, the state began moving out of Plaza Tower and into 1010 Common, a building owned by Continental Common, Inc.[8] Lease 1 and Lease 2 had expired by their terms as of December 2001, but Lease 3 did not expire until October 2003. The Plaza Tower plaintiffs alleged that Siegel and Corporate Realty acted as brokers of the 1010 Common Leases and received a commission therefrom.[9]

The Plaza Tower plaintiffs claimed that Siegel and Corporate Realty intentionally induced the State of Louisiana to breach Lease 3 and interfered with the renewal of Leases 1 and 2. The first cause of action for tortious interference alleges that Siegel and Corporate Realty "had knowledge of Lease 3 and each willfully and intentionally interfered with same." (Pl's Ex. 1, Pl's Mtn. for Summ. Judg. at ¶ 41). The second cause of action for tortious interference alleges that defendants "intentionally interfered with the relationship between Plaintiff and the State of

---

[7]Regarding the malfunctioning elevators, the petition actually alleges that the elevators at issue had been intentionally "vandalized and sabotaged in order to ensure their malfunction." (Pl's Ex. 1, Pl's Mtn. for Summ. Judg. at ¶ 30).

[8]Continental Common was a defendant in the Plaza Tower litigation, but is not a party to this suit.

[9]It is not clear from the Original Petition from whom Siegel received a commission, the State of Louisiana or Continental Common.

Louisiana with respect to the renewal of the State Leases at Plaza Tower." (Pl's Ex. 1, Pl's Mtn. for Summ. Judg. at ¶ 44). The third cause of action is for a conspiracy among the defendants "to tortiously interfere with the State's existing and prospective leases with Plaintiff." (Pl's Ex. 1, Pl's Mtn. for Summ. Judg. at ¶ 47).

In the Original Petition, the Plaza Tower plaintiffs sought compensatory and exemplary damages due to the defendants' alleged "specific intent . . . to cause substantial harm and injury to Plaintiffs" and due to Siegel's "criminal act of extortion." (Pl's Ex. 1, Pl's Mtn. for Summ. Judg. at ¶¶ 51-52).

The Plaza Tower litigation was resolved by a settlement agreement, filed under seal with this Court on December 6, 2004.

On October 18, 2002, Corporate Realty and Siegel gave notice to Gulf Insurance that they were being sued in the Plaza Tower litigation. Gulf Insurance denied coverage under the Policy by letter dated October 22, 2002. The basis of the denial as explained by the Claim Examiner is as follows:

> I realize that there may be no factual basis to the allegations made or evidence of any wrongdoing on the part of Corporate or its agents. Nevertheless, it is required that I compare the allegations in the claim demand to the language in the policy in order to do a coverage analysis. Having done so, I have concluded that there is neither a duty to defend or indemnify Corporate in this matter.
>
> . . . .
>
> **The complaint does not allege an error, omission or negligent act in the rendering of or failure to render professional services performed by the insured, as required by the Insuring Agreement. The plaintiffs allege intentional acts rather than errors or omissions.** As there have been no damages arising out of an error, omission or negligent act in the rendering of or failure to render professional services, the claim does not fall within the Insuring Agreement.

(Pl's Ex. 4, Pl's Mtn. for Summ. Judg.) (emphasis added). Plaintiffs claim that the denial was improper and that their claim is covered under the Policy.

6

## II.    Cross Motions

In their Motion for Summary Judgment or, alternatively, for Partial Summary Judgment, Plaintiff seeks reimbursement of all legal fees and costs they incurred and paid in defending the Plaza Tower litigation, the settlement amount paid to resolve that litigation, and penalties and interest. Plaintiffs claim that the Policy covered the claims made against them in the Plaza Tower litigation arising from an "error, omission or negligent act" while serving as real estate brokers or rendering real estate services. They further allege that Gulf Insurance breached the Policy by refusing to provide and pay for the defense and refusing to fund the settlement of the Plaza Tower litigation. The further claim that the stated reason for denial of coverage–i.e., that intentional acts are excluded from coverage–is not supported by either the language of the Policy or the case law. They claim that a non-negligent or intentional error can constitute an "error" under the Policy.

For its part, Gulf Insurance alleges that denial was appropriate primarily because the underlying claim asserts only intentional, not negligent, acts. They claim that coverage cannot be triggered by an "intentional error." Moreover, even if coverage can be triggered by an "intentional error," the Defendant claims that the Original Petition does not allege an error or omission on the part of the Plaintiffs that would trigger coverage. The Defendant also states that the claims asserted in the underlying Petition do not arise out of the plaintiffs' rendering of or failure to render "professional [real estate] services" as required under the Policy.[10]

---

[10]The Defendant also asserts that denial was proper because there are multiple cases holding an error and omissions policy with the same language does not extend coverage to claims asserted by a competitor for tortious interference with existing contracts, prospective contracts or prospective economic advantage. The Court finds this argument to be without merit and will not address it at length as the parties did not do so either in their briefs or during oral argument. The

7

The Court shall consider each contention in turn.

### III.    Legal Standard

### A.    Summary Judgment

Summary judgment will be granted only if the pleadings, depositions, answers to interrogatories, and admissions, together with affidavits show that there is no genuine issue as to any material fact and that the defendant is entitled to a judgment as a matter of law. Fed. R. Civ. P. 56. If the party moving for summary judgment demonstrates the absence of a genuine issue of material fact "the nonmovant must go beyond the pleadings and designate specific facts showing that there is a genuine issue for trial." *Willis v. Roche Biomedical Laboratories, Inc.*, 61 F.3d 313, 315 (5th Cir. 1995). "[A] dispute about a material fact is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* To oppose a motion for summary judgment, the non-movant cannot rest on mere allegations or denials but must set forth specific facts showing that there is a genuine issue of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 321-22 (1986).

The burden of demonstrating the existence of a genuine issue is not met by "metaphysical

---

cases cited by the Defendant in support of this contention do not stand for the proposition that a different legal standard should be applied in the event that the suit is against a competitor. Rather, the cases state that coverage will not be extended when an insured is found to have committed acts that do not fall within the respective policies' definitions of "professional services" (*St. Paul Fire and Marine Ins. Co. v. Nat'l Real Estate Clearinghouse, Inc.*, 957 F.Supp. 187, 191 (D.C. Mn. 1997); *Albert J. Schiff Assoc., Inc. v. Foack*, 425 N.Y.S. 2d 612 (1980); *TransAmerica Ins. Co. v. Hill Sayble*, 193 Cal. App. 3d 1562 (Cal. App. 1987)); when the policy at issue expressly excludes "intentionally wrongful acts" (*Compaq Computer Corp. v. St. Paul Fire and Marine Ins. Co.*, 2003 WL 22039551 (Minn. App. 2003); and when a claim is based on conduct that occurred prior to any performance of professional real estate services (*Crum & Forster Managers Corp. v. Resolution Trust Corp.*, 620 N.E.2d 1073 (S.Ct. Ill. 1993).

doubt" or "unsubstantiated assertions." *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 586 (1986)).  The Court must "resolve factual controversies in favor of the nonmoving party, but only when there is an actual controversy, that is, when both parties have submitted evidence of contrary facts." *Id.* The Court does not, "in the absence of proof, assume that the nonmoving party could or would prove the necessary facts." *Id.* If the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, no genuine issue exists for trial. *See Matsushita*, 475 U.S. at 588.  Finally, "the mere existence of some factual dispute will not defeat a motion for summary judgment; Rule 56 requires that the fact dispute be genuine and material." *Willis*, 61 F.3d at 315.  If the evidence leads to only one reasonable conclusion, summary judgment is proper. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986).

**B.      Contract Interpretation**

This being a diversity case, state law will apply.  The parties do not dispute that Louisiana law governs the interpretation of the Policy at issue in the case.  Under Louisiana law, "an insurance policy is a contract that must be construed in accordance with the general rules of interpretation of contracts set forth in the Louisiana Civil Code." *American Intern. Specialty Lines Ins. co. v. Canal Indem. Co.*, 352 F.3d 254, 262 (5th Cir. 2003).  "A court's role in interpreting insurance contracts is to ascertain the common intent of the parties to the contract." *Id.* (citation omitted).  The "[w]ords of a contract must be given their generally prevailing meaning." La. Civ. Code art. 2047.  When the contractual language is "clear and explicit and leads to no absured consequences, no further interpretation may be made in search of the parties' intent. La. Civ. Code art. 2046.  It is well settled that ambiguous provisions in insurance polices

are strictly construed against the insurer and in favor of coverage. *Hardy v. Hartford Ins. Co.*, 236 F.3d 287, 290 (5th Cir. 2001).

## IV.    Professional Services

In support of their Motion, Defendant claims that denial was proper in the case because the claims asserted in the underlying Petition do not arise out of the Plaintiffs' rendering of or failure to render "professional [real estate] services." Rather, according to the Defendants, the claims arise out of the Plaintiff's intentional business torts, which are ancillary to the performance of real estate services. This argument is without merit.

The Original Petition alleges that Siegal and Corporate Realty acted as brokers of the 1010 Common Leases and received a commission therefrom. Brokerage services are expressly contained within the definition of "professional services" provided in the Policy. However, the Defendant states that the claim in the Plaza Tower litigation arose from Siegel and Corporate Realty's intentional business torts, not their activities as real estate brokers.

In support of their contention, Defendants cite an Illinois Supreme Court case, *Crum and Forster Managers Corporation v. Resolution Trust Corporation*, 620 N.E. 2d 1073 (1993). This case is certainly not binding on this Court and is distinguishable to the facts of the case at bar. In *Crum*, the claims were "made against the insureds because they allegedly stole Dependable's secret sales techniques, listings, employees, and clients ***prior to doing anything with them in a real estate professional capacity***." *Id.* at 1079 (emphasis added). Thus, the Court denied coverage under the policy at issue covering errors and omissions "arising out of the . . . Insured's profession as a real estate agent or real estate broker." *Id.* In the case at bar, although the extortion claim may arise out of alleged conduct that occurred prior to performance of

10

professional services, the business torts alleged by the Plaza Tower plaintiffs arise from the brokerage deal undertaken by Siegel and Corporate Realty present separate and distinct theories of liability from the extortion claim.

In *Jensen v. Snellings*, 841 F.2d 600 (5th Cir. 1998), investors filed suit against their attorney, among others, alleging violations of federal securities law and civil RICO.  The district court found that the attorney's professional liability insurers owed neither a duty to defend the suit nor coverage under the polices because the trial court found that the complaint asserted claims of misconduct based upon the attorney's rendering of investment advice not legal services.  The Fifth Circuit reversed, defining professional services more broadly, and stating, "[w]hile it is true that the complaint focuses on [the attorney's] acts as an investment advisor or manager, we are compelled to consider all of the allegations in determining an insurer's duty to defend."  *Id*. at 613.

Brokerage activities are included in the definition of "professional services" provided in the Policy.  The Court finds that the business torts alleged in the Original Petition arose, at least in part, from the performance of brokerage duties and coverage, therefore, cannot be excluded based on this argument.

## V.    Intentional Errors

In its denial, Gulf Insurance stated that there was no coverage under the Policy because the plaintiffs in the Plaza Tower litigation alleged intentional acts rather than errors or omissions.  As noted above, the Policy provides coverage for damages arising from errors, omissions, or negligent acts.  Gulf Insurance argues that the alleged conduct constitutes an *intentional act,* and the Policy only provides coverage for negligent acts.  The Plaintiffs claim

11

that the alleged conduct constitutes an error, albeit an intentional one, and, thus, should be

covered under the Policy. This argument presents two issues. First, whether or not the Policy

covers intentional errors. Second, whether or not the conduct alleged in the Original Petition

constitutes an error as defined in the Policy. The Court shall discuss each in turn.

First, courts have held that policies providing similar or identical language to the

phrase at issue ("errors, omissions or negligent acts") *do* include intentional or non-negligent

errors. For example, the District of Columbia Circuit has held that an insurance policy which

limited coverage to damages arising from 'error, negligent omission or negligent act' covered a

breach of contract claim against a law firm, even though the claim did not assert negligence, as

the policy covered intentional, non-negligent errors. *Continental Cas. Co. v. Cole,* 809 F.2d 891,

896 (D.C. Cir. 1987). In that case, like the case at bar, the insurance company argued that the

policy at issue only covered negligent errors, omissions, and acts. The D.C. Circuit explained,

> Continental's argument is without merit. The policy says error, not negligent error. An
> error is 'a mistaken judgment or incorrect belief as to the existence or effect of matters of
> fact . . . ." BLACK'S LAW DICTIONARY 487 (5th ed. 1979). This definition
> encompasses intentional, non-negligent acts like those associated with the breach of a
> contract . . . . Therefore, because the policy covered all errors, not just negligent errors,
> and because a breach of contract is a covered error, we agree with the district court's
> conclusion that Berger's allegations fell within the 'error, negligent omission and
> negligent act' language of the policy.

*Id.* at 896.

Similarly, the United States District Court for the Southern District of New York found

that a professional liability policy covering claims arising from "Wrongful Acts," defined as "any

actual or alleged error, omission, or negligent act" included non-negligent conduct. *S.E.C. v.*

*Credit Bancorp, Ltd.*, 147 F.Supp. 2d238, 263 (S.D.N.Y. 2001). Interestingly, Gulf Insurance

12

was a defendant in the *Credit Bancorp* case.  In *Credit Bancorp*, Gulf Insurance denied coverage

or any duty to defend and claimed that the alleged intentional conduct was not an "error" or

"omission" under the policy.  The court rejected its argument:

> In support of their motion for summary judgment, the Insurers contend that all losses
> arising out of any intentional conduct, such as breach of fiduciary duty, are excluded by
> the definition of "Wrongful Acts" in the . . . Policy. . . .
>
> The term "Wrongful Acts" is defined in the E&O Section as:  "any actual or alleged error,
> omission, or negligent act in rendering or failure to render professional services . . .
>
> CBL's E&O Coverage specifically excludes losses arising out of only certain intentional
> conduct such as libel, slander, defamation . . . or any dishonest, fraudulent or criminal act
> or omission.  *There would be no need for these specific exclusions if all intentional acts
> were excluded by the "Wrongful Act" definition.*  As one court has found with respect to
> similar policy language, "[t]he presence of these exclusions covering specific types of
> intentional conducts suggests [the insurance company] understood other types of
> intentional misconduct to be covered by the policy.  Independent School District No. 697,
> Eveleth, Minn. v. St. Paul Fire & Marine Ins. Co., 515 N.W.2d 576 (Minn. 1994).
>
> *Therefore, the definition of "Wrongful Acts" covers non-negligent conduct not
> specifically excluded under the terms of the Policy.*

*Credit Bancorp*, 147 F.Supp. 2d at 263-264 (emphasis added).

The Court agrees with the reasoning of the above-cited courts and finds that the Policy at

issue includes non-negligent or intentional errors and omissions.  As in the above cases, had Gulf

Insurance intended to limit coverage to damages arising out of negligent acts, errors and

omissions, it would have so stated.  Moreover, even the exclusions contained within the Policy

do not exclude intentional errors and omissions.  At best, the wording of the Policy is unclear or

ambiguous in this regard and, under the law, ambiguities must be resolved in favor of coverage.

Thus, as a matter of law, the Court finds that the Policy at issue covers non-negligent or

intentional errors.  The Court now turns to whether or not the Original Petition contains

allegations that constitute errors.

Gulf Insurance claims that there is no allegation in the Original Petition that can reasonably be construed as an error or omission. Instead, Gulf Insurance claims that the petition "describes only intentionally wrongful conduct," "conduct with the 'specific intent' to cause harm." (Def.'s Supp. Memo. at pgs. 3 and 4). While the Defendant chastises the Plaintiffs for failing to identify an "error," the Defendant concludes that the conduct alleged in the Original Petition is not an error without identifying any specific portions of the Petition which support its conclusion. The Court is simply not persuaded by the Defendant's argument. The Plaintiffs' conduct while "acting as brokers" in moving the State of Louisiana to 1010 Common, can be a tortious error inspired by motives other than malice and perhaps covered by the Policy. The Petition supports such an interpretation.

Accordingly, the Court finds that the Policy at issue provides coverages for damages arising from non-negligent or intentional errors. The Court also finds that the Original Petition alleges conduct that constitutes errors. The issue, then, is whether or not the exclusion applies, such that denial of the claim was proper.

## VI. Exclusions

The Defendant also argues that the conduct outlined in the Petition constitutes "malicious" conduct as excluded under the Policy. Black's Law Dictionary defines malice as "[t]he intent, without justification or excuse, to commit a wrongful act." Black's Law Dictionary 976 (8th ed. 2004). One could say that a malicious act is one undertaken with ill-will. Thus, according to Gulf Insurance, the Policy excludes coverage for any act, error or omission committed with the intent to harm or commit a wrongful act. Thus, based on this exclusion, the Defendants ask the Court to find the following:

14

> Construing the policy as a whole therefore leads to the following conclusions.  First, the
> policy covers only negligent, not intentional acts.  Further, the policy does not cover any
> errors or omissions intended to cause harm. . .  Finally, the policy does not cover any
> damages expected or intended by any insured.

(Defs. Mtn. for Summ. Judg. at 13).

The Defendant claims that the conduct, whether an act or an error, of Siegel was

malicious.  The Plaintiffs claim that the conduct constitutes a non-negligent or intentional error

that was not inspired by malice.  The Court has already determined that the Policy at issue covers

non-negligent errors.  The Court, however, cannot resolve the question of the character of the

conduct at issue without entering into the factual fray.  Thus, the Court finds that whether or not

the conduct at issue was malicious presents a question of material fact not ripe for determination

on summary judgment.

The same holds true for the question of whether the alleged conduct is excluded under the

Policy as "damages expected or intended by any insured."  (Pl's Ex. 2, Pl's Mtn. for Summ.

Judg. at Section VI(b)).

The Court finds that these material facts go to the question of whether or not the Plaintiffs

are entitled to indemnification for the settlement amount.  Thus, the Court DENIES the

Plaintiffs' Motion for Summary Judgment in part and finds that the question of whether they are

entitled to recover the settlement amount is not appropriate for disposition on summary

judgment.

The presence of these unresolved factual issues, however, does not defeat the Plaintiffs'

contention that they are entitled to a defense under the Policy as the Court shall discuss below.

**VII.    Duty to Defend and Indemnify**

The duty to defend is broader than the duty to indemnify under Louisiana insurance law.

15

*Jensen v. Snellings*, 841 F.2d 600, 612 (5ᵗʰ Cir. 1988). "The duty to defend is determined solely by a comparison of the allegations of the complaint against the insured with the terms of the policy." *Id.*; *Selective Ins. Co. of Southeast v. J.B. Mouton & Sons, Inc.*, 954 F.2d 1075, 1077 (5ᵗʰ Cir. 1992).[11] "If the allegations 'unambiguously and absolutely' exclude coverage under the policy, the insurer is relieved of the duty to defend." *Selective Insurance Company*, 954 F.2d at 1077 (citing *Vaughner v. Pulito*, 804 F.2d 873, 877 (5ᵗʰ Cir. 1986)). "In making this determination, the Court should liberally construe and accept as true, the allegations of the plaintiff's petition." *Vaughner*, 804 F.2d at 877. If the petition shows potential coverage under the policy and liability to the plaintiff, the insurer must defend regardless of the outcome of the suit. *Id.* Even under the liberal construction doctrine, however, the allegations must be factual in nature to impose a duty to defend. *Landry v. Oceanic Contractors, Inc.* 731 F.2d 299, n. 2 (5ᵗʰ Cir. 1984). The Court is not required to assume that mere conclusions stated in the pleadings are correct. *Imperial Casualty & Indemnity Co. v. Aetna Ins. Co.*, 1988 WL 104813, *2 (E.D.La., October 6, 1988).

In this case, the allegations in the Original Petition do not "unambiguously and absolutely" exclude coverage under the Policy. The Original Petition includes an allegation of extortion that might be excluded under the Policy, however the Petition also raises business tort claims that are not dependent upon the extortion claim. Moreover, neither Louisiana nor Texas law requires a showing of malice or ill will for a tortious interference cause of action. Thus, the business tort claims fall outside the Policy exclusions and are covered. Plaintiffs do not dispute that the business tort claims are based on intentional conduct, but, as discussed above, the Policy

---

[11]This analysis is referred to as the eight-corners rule.

does not exclude all intentional conduct. Many of the misdeeds complained of could have occurred due to an error of judgment, based on the CRG's desire to satisfy its client or even to reap more monetary rewards for itself without malice or the specific intent to cause harm. "[I]f there are any facts which, when taken as true, support a claim for which coverage is not unambiguously excluded, then the duty to defend arises." *Brooks, Tarlton, Gilbert v. U.S. Fire Ins.*, 832 F.2d 1358, 1367 (5th Cir. 1987).

Moreover, the Court finds that the presence of a material fact as to the applicability of the exclusion provision necessitates finding a duty to defend. If it were clear and unambiguous that coverage was not available, then the Defendant would prevail on summary judgment. However, it is not clear and unambiguous. Even if at trial coverage is not found, Gulf Insurance still has the duty to defend in this case. In so ruling, the Court notes that "this finding comports with Louisiana law construing the duty to defend broadly, since, when a suit is filed against an insured, he has been merely accused, not tried and found guilty." *Jensen*, 841 F.2d at 615.

Accordingly, the Court GRANTS the Plaintiffs' Motion for Summary Judgment as to the duty to defend and DENIES the Defendant's Motion for Summary Judgment. If the parties cannot agree on the appropriate amount of attorneys' fees to be awarded in the case, a hearing shall be scheduled.

## VIII.   Penalty Damages

Plaintiffs ask the Court to award penalty damages pursuant to Louisiana Revised Statutes sections 22:1220 and 22:658. The Court finds that penalty damages are not warranted in this case.

Under section 22:1220, an insurer owes its insured "a duty of good faith and fair dealing"

17

and has "an affirmative duty to adjust claims fairly and properly and to make a reasonable effort

to settle claims." La. R.S. 22:1220.  If an insurer breaches any of those duties, then, in addition

to compensatory damages, the plaintiff is entitled to penalties against the insurer equal to two

times the damages sustained.  *Id.*  Under the statute, (i) "[m]isrepresenting pertinent facts or

insurance policy provisions relating to any coverage at issue," or (ii) "[f]ailing to pay the amount

of any claim due any person insured by the contract within 60 days after receipt of satisfactory

proof of loss from the claimant when such failure is arbitrary, capricious, or without probable

cause," constitute a breach of that duty of good faith and fair dealing and entitle the insured to

recover penalty damages.  *Id.*

 Similarly, under section 22:658, an insurer must pay the amount of any claim due an

insured within 30 days after receipt of satisfactory proof of loss from the insured, and failure to

make such payment, when such failure is found to be "arbitrary, capricious, or without probable

cause," subjects the insurer to a penalty, in addition to the amount of loss, of 25% of the amount

found to be due.  La. R.S. 22:658.

 In this case, the Court finds that the Defendant's denial does not rise to the level of

"arbitrary, capricious, or without probable cause."  Because of the "penal nature" of the penalty

damages statutes, the statutes are to be "strictly construed and [are] not automatically applicable

whenever an insurer is cast in coverage or a defense." *Saavedra v. Murphy Oil U.S.A., Inc.*, 930

F.2d 1104, 1111 (5th Cir. 1991).  As summary judgment is not appropriate as to the question of

coverage and the Court finds that denial of a defense was not "arbitrary, capricious, or without

probable cause" the Court hereby DENIES Plaintiff's Motion for Summary Judgment regarding

penalty damages.

18

## IX. Conclusion

Accordingly and for the foregoing reasons, the Court hereby GRANTS the Plaintiffs'
Motion for Summary Judgment in part and DENIES the Plaintiffs' Motion for Summary
Judgment in part.  The Court GRANTS the Plaintiffs' Motion as to the duty to defend and
DENIES it as to reimbursement for the settlement amount and penalty damages.  The Court
DENIES the Defendant's Motion for Summary Judgment.

It is so ordered,

This ___ day of January, 2005, New Orleans, Louisiana.

United States District Judge